# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 5451 | **DATE** | 11/15/2000 |
| **CASE TITLE** | JOSEPH L. SIMMONS vs. CHICAGO BOARD OF EDUC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at_____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held. For the reasons set forth in defendant's motion for summary judgment, the motion is granted as to all counts. Enter memorandum and order.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | NOV 16 2000 date docketed | |
| ✓ | Docketing to mail notices. | | 40 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | | FILED FOR DOCKETING 00 NOV 15 PM 7:06 | date mailed notice |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JOSEPH L. SIMMONS, )
)
    Plaintiff, )
) No. 97 CV 5451
v. )
)
CHICAGO BOARD OF EDUCATION, ) Judge John W. Darrah
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Joseph L. Simmons, an African-American, commenced an action against defendant, The Chicago Board of Education (Board) alleging the Board violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; violated Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, by demoting him and decreasing his salary due to his race; and violated his First Amendment rights by demoting him and decreasing his salary due to his political activity of running for alderman of the 18th ward of Chicago. Before this Court is the Board's Motion for Summary Judgment under Federal Rule of Civil Procedure 56(c).

Summary judgment is proper if " the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). All the evidence and the reasonable inferences that may be drawn from the evidence is viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Insurance Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). However, the nonmovant must still come forward with evidence establishing the elements of his claim on which he bears the burden



of proof at trial. As such, he must establish specific facts that show there is a genuine issue for trial.[1] *Miller*, 203 F.3d at 2003.

I. Title VII Discrimination Claim

In October 1995, plaintiff was hired as treasurer of the Board. (Def.'s 56.1(a)(3) Statement ¶ 6). At the time of his hire, plaintiff had past experience issuing revenue bonds for school districts throughout Illinois which frequently required review of securities and investments in connection with bond issues. He was the first African-American hired as treasurer. (Id., ¶¶ 4,10; Plaint.'s 56.1(a)(3) Statement ¶ 83).

Mr. Kenneth Gotsch, the Board's Chief Fiscal Officer (CFO), had the authority and made the decision to hire plaintiff. (Id., ¶ 7). Mr. Gotsch told plaintiff at the beginning of his tenure not to become too involved in the day-to-day trading practices. (Def.'s 56.1(a)(3) Statement ¶ 11). Plaintiff was not authorized to interfere with the daily trade activities of the Board's trader during the "execution phase" of the trade. (Id., ¶ 13). The determination of what securities to invest in and the amount and length of maturities by the Board's trader was guided by weekly and monthly investment committee meetings and the Board's Investment Policy (Investment Policy). (Id., ¶ 14). Plaintiff believed that Mr. Gotsch's directive to not approve each trade was contradictory to the

---

[1] Plaintiff's response to the Board's Rule 56.1(a)(3) Statement of Facts contains denials of certain defendant facts and additional facts. Support for the denials and additional facts are primarily found within an attached affidavit by Mr. Simmons. The denials and purported facts that are supported by the pleadings and depositions are contained in the present opinion. Denials and additional facts that are not supported or are contradictory to other pleadings and/or depositions are not considered. See *Russel v. Acme-Evans Co.*, 51 F.3d 64, 67 (7th Cir. 1995)(the court is "highly critical of efforts to patch up a party's deposition with its own subsequent affidavit); *Slowiak v. Land O' Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993)("[s]elf-serving affidavits without factual support in the record will not defeat a motion for summary judgment."

2

Investment Policy. (Id., ¶ 26).

Contrary to the directive he received, plaintiff instituted a policy requiring the trader obtain his approval before a trade was initiated if the trade was outside of their previous discussions and understanding. (Def.'s 56.1(a)(3) Statement ¶ 15; Plaint.'s Dep. 18-19, 22-23). Plaintiff also hosted an off-site Christmas party for the treasury staff during working hours without leaving staff to complete trading work. (Mr. Vallas' Dep. 62). Following the Christmas party, Paul Vallas, the Chief Executive Officer, moved some of the Board's trading staff to the City of Chicago's Treasury Office. (Plaint.'s 56.1(a)(3) Statement ¶ 99; Plaint.'s Dep.46-47).

Between January and April, 1996, the City of Chicago's Treasury Department complained to Mr. Gotsch on approximately five occasions that plaintiff delayed and/or countermanded the Board's trader in her selection of what security to invest in and the maturities or amounts of each trade. (Def.'s 56.1(a)(3) Statement ¶¶ 17,18). Mr. Gotsch also received complaints that plaintiff was interfering with trades to the detriment of the Board from Mr. Gilchrist, the Deputy Chief Fiscal Officer; Charles Burbridge; and other Board employees. (Id., ¶ 19).

Mr. Gotsch believed that plaintiff became too actively involved in the trader's job functions such that the department was losing the ability to appropriately separate their activities and avoid conflicts of interests; he estimated the delays cost the Board over $50,000 but less than $500,000. (Id., ¶¶ 21 - 23). On April 8, 1996, Mr. Gotsch directed Mr. Burbridge to issue a disciplinary memorandum to plaintiff directing him not to interfere with the actual trading practices of the Board's traders. (Id., ¶ 24). On that same day, Mr. Burbride informed plaintiff, through a memorandum, of the need to clarify the treasurer's approval function. The memorandum stated there were continued problems in the timely execution of trades. It stated that the treasurer was involved

prior to trading by establishing strategies and control systems and in monitoring and reporting on the trades after the trade took place and that the Investment Policy did not require the treasurer to approve each individual trade prior to its execution. The memorandum warned that failure to comply with the directive would result in disciplinary action. (Plaint.'s Dep. Exh. 7). Mr. Gotsch believed plaintiff continued to interfere with the Board's traders following the April 8 memorandum, and such involvement constituted insubordination. (Id., ¶ 25; Mr. Gotsch's Dep. 141).

In May, 1996, Mr. Gotsch made the decision to remove plaintiff from the treasury position. Mr. Vallas deferred to Mr. Gotsch's determination to remove plaintiff. (Def.'s 56.1(a)(3) Statement ¶ 55; Mr. Vallas Dep. 40-41). Mr. Gotsch decided to transfer plaintiff to a project manager position effective June 30, 1996. (Def.'s 56.1(a)(3) Statement ¶¶ 57 & 58). Plaintiff received a bi-weekly decrease in salary of $25.00, equating to a total loss of $125.00. After five pay periods, plaintiff received a pay increase of $80.40, equating to an increase of $55.40 per pay period from his salary as treasurer. (Id., ¶ 59). A few months later, plaintiff requested a transfer to a project manager position in a different department. Mr. Gotsch granted plaintiff's request. (Id., ¶ 60). Plaintiff was replaced by a white female. (Plaint. 56.1(a)(3) Statement ¶ 117). While plaintiff was treasurer, the Board's bond rating increased. (Id., ¶ 115).

Plaintiff did not encounter any racially biased remarks or gestures during his tenure as the Board's treasurer. (Id., ¶ 52). Plaintiff does not believe that Mr. Gotsch had any type of bias against him due to his political activities and that he backed him regarding his job performance. He did not notify Mr. Gotsch that he felt he was being discriminated against due to his race or political activities before he was removed as treasurer. Andrew Gilchrist, the Board's Controller who was directly above plaintiff in the chain of command during his tenure as treasurer, never heard any conversation

with any other employee of the Board where plaintiff's race or political activities were the reason he was removed from his treasury position. (Id., ¶¶ 42-46, 49, 51).

To succeed with a Title VII claim, plaintiff must demonstrate that the employer took adverse employment action against him because of intentional discriminatory reasons. See *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 982 (7th Cir. 1999). A plaintiff may prove discrimination through either direct or circumstantial evidence or the indirect burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct 1817, 36 L. Ed. 2d 668 (1973); *Jackson*, 176 F.3d at 982. Plaintiff did not choose to pursue his claim through the direct method; thus, the focus is on the *McDonnell Douglas* method.

Plaintiff must establish a prima facie case by the preponderance of the evidence. *Jackson*, 176 F.3d at 982. A prima facie case is established by showing: (1) plaintiff was in a protected class; (2) plaintiff performed his job duties such that he was meeting his employer's legitimate expectations; (3) despite his performance, plaintiff suffered an adverse employment action; and (4) similarly situated employees, outside the protected class, were treated more favorably than plaintiff. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668. If the plaintiff establishes a prima facie case, a rebuttable presumption is created; and the employer must come forward with evidence of a legitimate, nondiscriminatory reason for its actions. If the employer meets this requirement, the burden shifts back to the plaintiff to demonstrate, again, by a preponderance of the evidence, that reasons proffered by the employer are actually a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S. Ct. 1817, 36 L. Ed. 2d 668.

5

A. Elements to Establish a Prima Facie Case

(1) Protected Class and (3) Adverse Employment Action

Defendant does not dispute that plaintiff is within a protected class. In addition, plaintiff has shown that his demotion was an adverse employment action. An adverse employment action is "a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993). Adverse employment actions encompass more than simply the termination of employment or a decrease in salary. They also may include actions such as bestowing on an employee "a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady*, 993 F.2d at 136.

Plaintiff was demoted to a project manager and made a lower salary. At a minimum, the description of plaintiff's change in position as a "demotion" by both plaintiff and Mr. Gotsch and his decrease in salary represent a question material fact whether plaintiff suffered an adverse employment action.

(2) Meeting Employer's Legitimate Expectations

The undisputed facts show that plaintiff was instructed not to become too involved in the day-to-day trading. Mr. Gotsch received complaints that plaintiff was interfering with trades to the Board's detriment. Based on these complaints, a disciplinary memorandum was issued to plaintiff specifically directing him not to interfere with the actual trading practices of the Board's traders. Mr. Gostch believed plaintiff continued to interfere with the Board's trading, and such involvement constituted insubordination. Plaintiff attempts to counter testimony in Mr. Gotsch's and Mr. Vallas'

6

depositions that he continued to interfere with the Board's trades through an affidavit filed with his response to the Board's motion for summary judgment. Plaintiff avers that following the disciplinary memorandum, he took a "hands off approach to the Board's trading practices." There is no other evidence in the record, including plaintiff's deposition, supporting his statement in the newly filed affidavit. "Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment." *Slowiak v. Land O' Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993). In addition, plaintiff held a Christmas party during working hours in which he failed to provide proper office coverage. The undisputed facts demonstrate that plaintiff did not meet the Board's legitimate expectations, and he cannot establish a prima facie case.

(4) Similarly Situated Employees, Outside the Protected Class, Treated More Favorably

In determining whether two employees are similarly situated a court must look at all relevant factors, the number of which depends on the context of the case. See *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396-97 (7th Cir. 2000). For example, in disciplinary cases – in which a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason – a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct. *Byrd v. Ronayne*, 61 F.3d 1026, 1032 (1st Cir.1995). This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992).

In his deposition, plaintiff testified that Cynthia Ashgar, a supervisor in the finance department, was a similarly situated employee who was not demoted. In his response to the Board's

motion, plaintiff does not argue Ms. Ashgar was a similarly situated employee; instead, he argues that Mr. Gotsch and Mr. Gilchrist, both Caucasian, pre-approved trades but were not disciplined. All of plaintiff's arguments fail. Plaintiff presented no evidence that Ms. Ashgar failed to carry out any directive and was considered insubordinate by her superiors at any time, yet was not disciplined for such actions.

Mr. Gotsch, as plaintiff's boss, is not a similarly situated employee. In addition, plaintiff failed to provide evidence that Mr. Gotsch pre-approved trades or that the trades allegedly approved by Mr. Gotsch were not those specifically required to be made by him per the Investment Policy.

As to Mr. Gilchrest, while plaintiff established that Mr. Gilchrest approved some trades, Mr. Gilchrest's deposition testimony indicates he approved trades when the trader was unable to contact plaintiff for approval – approval that was necessary due to policy requiring pre-approval of a trade instituted by plaintiff. Furthermore, plaintiff provides no evidence that Mr. Gilchrest continued to pre-approve trades following plaintiff's disciplinary memorandum or that he engaged in insubordination without consequence.

B. Pretext

The plaintiff has failed to establish the necessary elements to support a prima facie case. Assuming argumendo, that plaintiff could establish a prima facie case, he fails to demonstrate that the Board's reason for demoting him was a pretext for discrimination.

If a plaintiff establishes a prima facie case, a rebuttable presumption is created; and the employer must come forward with evidence of a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668. Here, the Board has come forward with a legitimate, nondiscriminatory reason for its actions – plaintiff's insubordination –

particularly as to plaintiff's interference with trading by the Board as discussed above.

The burden now shifts back to plaintiff to demonstrate, again by a preponderance of the evidence, that reasons proffered by the employer are actually a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S. Ct. 1817, 36 L. Ed. 2d 668; *Jackson*, 176 F.3d at 982. A plaintiff can establish pretext by showing that the employer's explanation is unworthy of credence or that a discriminatory reason more likely motivated the employer. *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 395 (7th Cir. 1998). Pretext in this context does not mean a mistake; rather, it means "a lie, specifically a phony reason for some action." *Russel v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir 1995). An honest belief in the nondiscriminatory reason offered by the decision-maker will be sufficient even if the reasons are foolish, trivial, or even baseless. *Debs*, 153 F.3d at 396.

Plaintiff argues that the Board's offered justification for termination was not legitimate because of the Board's "drastic" departures from procedure and the manipulation of his staff. Plaintiff offers no explanation or evidence of what, if any, of the Board's procedures were departed from. Plaintiff has failed to offer evidence to infer that the Board's rationale for his transfer was pretextual for discrimination.

II. Section 1981 Claim

Plaintiff also alleges that defendant demoted him because of his race in violation of his civil rights, Section 1981 of the Civil Rights of 1966 as amended by the Civil Rights Act of 1991, 42 U.S.C §1981. The Board argues this Court should dismiss plaintiff's Section 1981 count because he cannot bring such an action against a state actor.

Presently there is a split in the district court whether a plaintiff may bring a separate § 1981

9

action directly against state actors or whether 42 U.S.C. § 1983 is the exclusive remedy. In *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 735, 109 S. CT. 2702, 105 L. Ed. 2d 598 (1989), the Supreme Court held that a plaintiff may not proceed directly against a municipality under § 1981 for its violations of that section but instead must bring such actions under § 1983. It is an unsettled question whether *Jett* is still controlling. Some district courts have found *Jett* remains good law. See *Tabor v. City of Chicago*, 10 F.Supp. 2d 988, 991 (N.D. Ill. 1998) (Gettleman, J.); *Nolen v. City of Chicago*, No. 97 C 6608, 1998 WL 111675, at *3-6 (N.D. Ill. March 4. 1998) (Plunkett, J.) (declining to recognize a direct cause of action).

However, other courts have found that a plaintiff may bring an action against a municipality, finding a revision in § 1981(c) found in the Civil Rights Act of 1991 overturned the holding in *Jett*. See *Yohannan v. Patla*, 971 F.Supp. 323, 327 (N.D. Ill. 1997) (Aspen, C.J.); *Jackson v. City of Chicago*, No. 96 C 3636, 1996 WL 734701, at *8 (N.D. Ill. Dec. 18, 1996) (Castillo, J.); *Jefferson v. City of Chicago*, No. 97 C 4895, 1999 WL 116223, at *3 (N.D. Ill. Fe. 26, 1999) (Williams, J.) (recognizing a direct cause of action). These courts have primarily relied upon the analysis in *Federation of African American Contractors v. Oakland*, 96 F.3d 1204 (9th Cir. 1996), in which the court found the legislation overturned *Jett*, implying a direct cause of action against state actors.

This Court respectfully declines to follow the analysis of the *Tabor* and *Nolen* cases. Instead, this Court agrees with the analysis and conclusions of *Yohannan*, *Jackson*, and *Jefferson* and finds that plaintiff may bring suit under § 1981.

The same standards that governed liability under plaintiff's Title VII claim apply to his § 1981 claim. *Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998). As in his Title VII claim, plaintiff provides no direct evidence of discrimination, and he failed to present

evidence that he was meeting the Board's legitimate expectations or that a similarly situated employee in an unprotected class was more favorably treated. Moreover, if this Court were to find that plaintiff did establish a prima facie case, plaintiff failed to provide evidence contradicting the Board's nondiscriminatory reason for demoting him.

III. Section 1983 Claim

Plaintiff alleges the Board violated his civil rights in violation of 42 U.S.C. § 1983 because it demoted him due to his political activity of running for alderman of the 18th Ward of Chicago in 1995.

In October 1995, Alderman Thomas Murphy learned plaintiff was appointed treasurer through a newspaper and telephoned Mr. Vallas and complained that plaintiff was a poor choice for treasurer. (Def.'s 56.1(a)(3) Statement ¶¶ 31, 32). As the Chief Executive Officer, Mr. Vallas has overall management responsibility for the Chicago Public School System and reports to the Board of Trustees. (Mr. Vallas' Dep. 5). Mr. Murphy complained that plaintiff ran against him for alderman and had littered the ward with campaign literature but had refused to clean up the area after he lost the election. (Id., ¶ 33). Mr. Vallas was surprised because he did not know plaintiff had run for alderman and informed Mr. Murphy that the Board makes its own decisions independent of recommendations or influence from legislative members and that plaintiff had been hired based on his merits and not based on any political affiliation. (Id., ¶ 34; Plaint. 56.1(a)(3) Statement ¶ 69; Mr. Vallas' Dep. 20). Following the telephone conversation, Mr. Vallas contacted Mr. Gotsch to direct plaintiff to prepare a memorandum that detailed his qualifications for the treasury position. (Def.'s 56.1(a)(3) Statement ¶ 35). Mr. Vallas' objective in having plaintiff prepare the memorandum was to have documentation verifying plaintiff's qualifications. (Id., ¶ 36). Plaintiff had informed

11

Mr. Gotsch he had run for alderman during his interview. (Def.'s 56.1(a)(3) Statement ¶ 37).

Mr. Murphy did not have any other substantive conversation with any other employee of the Board regarding plaintiff's employment with the Board. (Id., ¶¶ 38-39). Plaintiff also ran for alderman of the 18th Ward in 1999 and has not suffered any adverse employment action or consequences from the Board due to his political activity. (Def.'s 56.1(a)(3) Statement ¶ 45).

A municipality can be liable for violating a person's civil rights if: (1) the municipality has an express policy that, when enforced, causes a constitutional deprivation; (2) the municipality has a widespread practice constituting custom or usage that caused the constitutional deprivation; (*Kujawski v. Board of Commissioners of Bartholomew County*, 183 F.3d 734, 737 (7th Cir. 1999)); or (3) a constitutional injury was caused by or ratified by a person with final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988); *Kujawski*, 183 F.3d at 737. The status of a person as a final policymaker under § 1983 is a question of state or local law. *Kujawski*, 183 F.3d at 737. Final policymaking authority may be directly granted by statute or delegated or ratified by an official having policymaking authority. *Kujawski*, 183 F.3d at 737.

Here, the Board and Chief Executive Officer Vallas have final policymaking authority by state law. See 105 ILCS 5/34-3.3. Plaintiff alleges evidence of a causal connection between his protected activities and his adverse employment action include the requirement he document his credentials after Mr. Murphy voiced a complaint, different treatment than other senior account executives, dilution of authority, and his demotion. The record does not support this theory.

The decision to demote plaintiff was Mr. Gotsch's alone, and Mr. Vallas testified that he did not recommend plaintiff be demoted but merely deferred to Mr. Gotsch's decision. Plaintiff testified

that he did not believe Mr. Gotsch had any bias toward him due to his political activities.

Mr. Gotsch and Mr. Vallas explained that the purpose behind asking plaintiff for a memorandum explaining his credentials after receiving the complaint from Mr. Murphy was to document plaintiff's credentials. Mr. Vallas also testified that he explained to Mr. Murphy that political affiliations were not considered in the hiring process. Furthermore, Mr. Gotsch knew plaintiff had run for alderman before he hired him, and Mr. Murphy questioned the hiring of plaintiff in October 1995. Plaintiff was not demoted until May 1996, nine months after Mr. Murphy's comments; and plaintiff was requested to document his credentials.

Last, Mr. Vallas and Mr. Gotsch explained that personnel were moved to the treasury department after proper coverage was not provided during plaintiff's Christmas party and because Mr. Vallas believed the move would foster better communication between the two departments.

The above undisputed facts demonstrate that Mr. Gotsch was responsible for plaintiff's demotion, his decision was based on his belief that plaintiff failed to follow directives, and Mr. Gotsch knew of plaintiff's political activity before he hired plaintiff. Plaintiff has failed to demonstrate genuine issues of material fact exist that establish Mr. Vallas caused his demotion or ratified Mr. Gotsch's action of demoting him because of his political activities.

Defendant's motion for summary judgment is granted as to all counts.

Dated: November 15, 2000

JOHN W. DARRAH
United States District Judge

13